Mr. Meechum, Mr. Meechum, Mr. Meechum, I'm sorry. Thank you, Your Honor. May it please the Court, Kevin Meechum on behalf of Petitioner Hugo Aguilar. With the Court's permission, I would like to reserve one minute of rebuttal. Okay. That's not going to be a whole lot. Your Honor, this appeal presents a simple question. Can the result of an act come before the act itself? Well, you know, one, it's not all that simple. And if you read, I don't want to get into this now, but according to Einstein, that's an open debate. We don't have time to move folks in one direction. It's not as simple as you think it is. Let me put it that way. So here, though, the question is, can the statutory language confinement as a result of conviction, can the confinement come before the conviction? You know, last night, Judge Phipps and I were talking about this particular case, and I had one example, and his is even better. I'll give you mine, and then you'll see why his is much better than mine. Let's say this person got 1,333 days of a sentence. What happens? He spent 1,332 because he couldn't make bail, but he gets one day additional. Is he eligible for cancellation or removal? I would argue yes, Your Honor, because he serves that one day after. So, Your Honor, the reason is not the fact that it's one day over the 180 days. He's fined for one day as a result of a conviction. If you want to be a literalist, that's being literal, right? Correct, Your Honor. And if he serves one day after, one day as a result of a conviction, one day after the conviction, that would render him eligible for cancellation of removal because he wouldn't have served the 180 days that the third requirement would render him ineligible as lacking statutory good character. Wait a minute. No person shall be regarded to be a person of a good moral character who, during a period of such and such, is or was during such period has been confined as a result of conviction to appeal. Okay. Let's say he got 181 days additional. Then, Your Honor, he would be ineligible for removal in that instance. Okay. Now, Judge Fitz, I'll let you answer a much better question. So this has a little bit of a setup, but why don't we assume that there's two twin brothers. They're both aliens, and they both committed the same crime. Time dilation. Are we going back in time? The paradox of separation of the spin or something. So there are two twin brothers. They've committed the same crime. It can be a conspiracy crime. And the first twin comes in front of the court, and he can't postpone. He apparently was the spender, not the saver, and he has to do pretrial detention. The second twin comes before the tribunal, and he can post bond, and so he's out. It just so happens that, working on coincidences here, the first twin serves 181 days, we can say, before the sentence is handed down. The sentence hands down, and it says you have to serve 180 days, both of you, for the same crime. The first twin has served 180 days, gets credit for time served. The second twin, who is on bond, now has to serve his 180 days. Assume after he serves his 180 days, an immigration proceeding shows up. And the question is, which of the twins is of good moral character? As I understand your argument, it would mean that the first twin would be of good moral character because he served his time beforehand. The second twin would be of not good moral character because he served his time afterwards. Do I understand your argument correctly? Your Honor, assuming the perfect hypothetical, you are understanding it correctly. And the reason for that is because, you know, just using the first twin, we will never know if his first, particularly in this instance, we will never know if the 1,332 days was the reason he, in pre-trial detention, three and a half years, we'll never know if that's the reason he pled guilty to one reduced count as opposed to the nine that he was charged. Well, it is, again, suspicious and actually telling that the sentence he got was 1,332 days. I mean, the chances of that sentence being imposed had he not... Are slim and none. Yeah, nonexistent. He got that sentence because of the fact he couldn't make bail. Correct, Your Honor. And that's the position here is that in Judge Phipps' hypothetical, that is the inequity. But that assumes a plea at the end of the day. Had Mr. Aguilar served those 1,332 days in pre-trial detention and not been acquitted or not been, excuse me, not pled or not been convicted, those pre-trial detention days are not as a result of conviction for the statute. Well, just to tease this out, though, sorry to go back to my hypothetical because it was a bit elaborate. But what that would mean, though, is that there would be a penalty on the second twin for exercising the bond option that was provided. Because he exercised the bond option, he's now penalized. And so it seems to me that under your reading, the consequence of deciding that, yes, I'd like to post bond is that if I later get a sentence, then I'm stuck with bad moral character versus if I serve early and don't post bond and voluntarily undertake pre-trial detention, maybe despite having the financial wherewithal to avoid it, then I have a shot of cancellation for removal. Well, in that instance, Your Honor, you know, as to the second twin, I would argue that he's not being penalized because he's free. Whereas. Penalized from the cancellation removal perspective, maybe not from a criminal perspective. Maybe not from the criminal. So then the consequence is if there are immigration consequences for an individual who's otherwise identical to his twin, but for his decision to post bail, isn't that a problem? It could be a problem if the decision to post bail was really a decision and not an imposition upon somebody who couldn't post bail. And I think the inverse of that is the fact that, you know, our petitioner, you know, if the reverse of that hypothetical, you know, if the wealthy individual who, you know, two twins, one wealthy, one not, one is stuck in, you know, pre-trial detention for 180 days, the other is free, the charges are dropped, you know, the person who was penalized was the one who was in pre-trial detention. Well, I mean, but it seems that there's potential penalties on either side. It seems that there's the penalty for the one in pre-trial detention of maybe he'll be deemed innocent or the charges will be dropped. On the other side, though, for posting bond, which I don't know if we have a case on point saying that that's constitutionally protected, but it seems that you could at least go down that road a little bit and say that's constitutionally protected. And now for exercising a potentially constitutionally protected right, he faces the possibility of having almost no chance of getting cancellation of removal. Correct. And in this instance, you know, construing it the other way, that it counts as pre-trial detention, there is, you know, my client is faced with no potential for demonstrating eligibility for cancellation of removal. Why not just rely upon the rule of lenity rather than dance around in all these metaphysics? Why not just rely upon the rule of lenity and resolve it that way? So that is the, if we cite the Melgar case, which is from the court. Melgar doesn't help that much because I'm not, they spit the phrase out there and then they have an ipsit-dixit in terms of defining it. But it really doesn't help that much. And in general, Your Honor, this does, this argument is in the nature of a rule of lenity argument. I mean, he, based on the straight language of the statute, Mr. Aguilar is being penalized twice. Don't you need a precondition? You need a precondition that the language is ambiguous? For, well, our argument, Your Honor, oh, you're correct, Your Honor, which is probably why the argument of lenity doesn't apply itself here. But your argument here is that this particular provision is not ambiguous. Correct. It is not. It is Petitioner's position that the language confinement as a result of a conviction presupposes or. But you make that argument to avoid Chevron, though, don't you? You're making that argument to avoid Chevron. Correct, Your Honor. Correct. Because this, because this court does not need to defer to an agency on issues of whether confinement as a result of conviction means what it means. So, so under your reading, in order for your reading to be correct, you have to assume that the statute is read temporally. And that every single component about that statute, 1107, 1101 F7, has a temporal component to it. Because you're saying that there's confinement as a result. But so much of the law isn't based on having a temporal component. We have entire doctrines that avoid temporal. Now is then is an entire strand of case law that suggests that temporal doesn't matter. And so in order for your reading to be correct, don't you have to convince us that this statute can only be read temporally? Your Honor, I would argue that that is that is correct because the statute is written the way it is. Were this to be some principle of equity or some other act or bargain that I was seeking relief upon, you know, I would I would I would say I would agree with you completely that much of the law can presuppose the fact that a consequence may be able to come after an act. In this instance, reading this statute, it is petition position. So what about this statute tells us that it must be read in time temporally only and not as we read most of the law always, which is temporal, is a component to it. But the law is built on now is then. And we're going to go back and re ascertain legal rights as if they were in the past. What about this statute? I mean, again, if they didn't say as a result of conviction, but said after the fact of conviction, that moves you really closely into, OK, time matters. But in the law results in time, strange as it may seem to Einstein and others, don't always have to to to be linked. Well, I would argue, I mean, you're to the other extent, Your Honor. Again, pretrial detention, you know, certain certain instances cannot be, you know, is not the result of a conviction, particularly when the person is acquitted, when charges are dropped. But but in this case, it happens to be and he was sentenced for time served. And so it seems that doesn't that sentence coupled with this statute, the only way that you win is to convince us that this statute must be read temporally and no other way. And I would argue in the petitioner's position is that as a result of is a temporal limitation and it brings in principles of causation. And so why wouldn't it read just after if you want to go temporal? You could just say after after it's meant for temporal as a result of implies that there's a lot of things in play, including legal things in play. And as I said, we have this doctrine known pro tempore. We go back and we we work through results. You know, you can I would I do wonder why they chose the phrase as a result. But they also could have chose the phrase or explicitly provided that pretrial detention or time served in the statute equals confinement. As a result of conviction. And the Congress did not do that. So your client now is in ice custody or state custody, ice custody, Essex correctional. And he's awaiting the disposition of his six that his Strickland appeal on divisive counsel. He has got a color book, Sixth Amendment violation. So even if you win here, what's the practical result of your client? He's still going to be in custody, isn't he? Your Honor, he still is in custody. He's been in custody for six years now. So which three and a half of those were spent pretrial in pretrial detention. He pled guilty based on ineffective assistance to counsel who did not advise. It seems like you've got a solid, at least a color book, not a solid Sixth Amendment claim. But this one, the practicality of it, if you win here, client is still in custody. It could take, I don't know how the state courts in Jerusalem work. I'm assuming if anything like Pennsylvania could take two to three years or more to litigate the Strickland claim in state court. Doing what she remains in custody. I see I'm out of time. I would like to answer. Correct, Your Honor. If we win here, he still will be in custody. And as as you correctly point out, it is a long road. However, if he is deported, his chances of obtaining cancellation of removal and remaining in America where he's been for 18 years and has three children, that will be lost. The legal argument would remain the same. Huh? The legal argument would remain the same if he goes to Honduras. The legal arguments or anything becomes more taxing in terms of resources, litigating that while the clients. And in your honor, I just say practically the chances of him coming returning from Honduras to, you know, then relitigate his cancellation of removal proceedings following the overturn of the conviction would be practically difficult, if not possible. You're saying you'd rather remain in custody if he wins in litigating the Sixth Amendment claim and return to Honduras and either abandon it or try to litigate it from there. Correct, Your Honor. We did reserve some time. Thank you. Thank you. May it please the court. Walter Burkini on behalf of the government. Your Honor, the court should hold that this provision in the INA confined as a result of conviction is ambiguous. And if the board's interpretation of it as covering pretrial detention, later creditors time served is the ambiguity is what? Well, the ambiguity is that for that as a result of does not necessarily need a temporal connection. Just going by looking at the dictionary definition alone. Although here, does it make any difference if it's temporal or not? When you look at 1101 F7, no person shall be regarded as or found to be a person of good moral character who during a period for which good moral character is required. And that's a 10 year period, right? That's right, Your Honor. To be established is, was one who during such periods, such 10 year period before has been confined as a result of conviction. So that might argue for your position, but it's not temporal because you have to include the 10 years that come before. Well, I think that any period of confinement that comes within that 10 years does not require temporal connection. That's if that's what you're getting at. That is the government. Well, the point is, does it help you or hurt you? I think our position is that it helps us because the statute was written in a broad manner to include any period during that time. Wouldn't that be so? Then the argument on your side would be, no, the statutes not necessarily ambiguous. It's unambiguous, wouldn't it? That is one way to approach it. I mean, the Tenth Circuit says ambiguous. The Ninth Circuit didn't say that, did it? They did not. The Ninth Circuit was wrong. No, the Ninth Circuit just did not simply. Well, you say it's ambiguous. The Ninth Circuit said it's not ambiguous. No, I'm sorry. Therefore, the Ninth Circuit's wrong? I'm sorry, Your Honor. The Ninth Circuit did not say whether it was ambiguous or not. It certainly didn't engage in this Chevron two-step that would be needed for an ambiguous statute. Therefore, the implication is that it was unambiguous, right? It certainly didn't defer to an agency decision without engaging in the Chevron analysis. It had to do so at what would require an ambiguity, so there was no ambiguity. Well, Your Honor, I think that the rationale of the Ninth Circuit calls for an ambiguity finding because it relied on a Second Circuit case that went into how it is common in all jurisdictions of the United States that pretrial detention can be later credited as time served. Actually, we can find that it's ambiguous and still not apply Chevron. I don't understand how the meaning of as a result of and statutory interpretation is something that we would defer to the BIA for. I mean, that's not the kind of thing that is uniquely within the expertise of the BIA, whether or not as a result of means X or Y. That's something that courts do all the time. It's not a lot like the Marbury v. Madison. Well, Your Honor, if this was a provision that was not in the INA, I would agree with you, but this is in the INA. Well, the fact it's in the INA does not – that's my point. It's the kind of thing courts do all the time. As a result of, what does that mean? This was a state statute. Sorry to pick up on that, but, yeah, if it was a state statute, we'd solve it. Yeah. Well, that's – I mean, Your Honor, that's – I think when it comes – in the context of immigration, the BIA has the expertise because it can look at – They have the BIA – they have the expertise with anything within the statute? Anything within the INA that is immigration – that is completely immigration related. That is immigration. Well, how does the meaning of as a result of touch upon the expertise of the BIA? Well, I would point out, Your Honor, that the INA is quite long, has quite many other provisions, and, for instance, there are in the portability grounds, 1227, Congress used the word after repeatedly to link – make a temporal connection between two events. That's a great point, but the BIA is not the only one that can solve that problem. Isn't that what courts do? Don't courts look at statutes and say you used after all the time in 1227, you used as a result of in 1107, 1101? I think my only point here, Your Honor, is that, you know, once the statute is ambiguous, the principles of Chevron then must be applied. Well, that's – well – I think that that's been the law in this circuit. Well, I mean, there is a notion that you – that the agency decision has to carry some force of law. We don't just defer to anything an agency ever says. If they post on their webpage, we don't just go with the webpage de jure. It has to have some degree of formality with it. In formal rulemaking, it seems to be the bottom of the barrel as far as what we'll go with on Chevron. So it's not just automatic whatever the agency says. There has to be some formalization. There has to be – it has to be a reasonable interpretation. And in this case, it is a reasonable interpretation in light of the fact that – Let me just pick up on something that struck me as – reasonableness is a good segue to this. Later in 1101F, after we get through 7 and then there's 8 and then there's 9, there's a catch-all. Yes, Your Honor. And the catch-all says, quote, quote, So it seems that even – I mean, why doesn't – why don't you just stipulate to a remand? Why don't you just stipulate to a remand, say the BIA didn't consider this? We've got this ambiguous provision according to you. And why don't you just go back and say, hey, you know, to the extent there's any ambiguity, we've got our catch-all. It might, according to you, fit squarely into F7. But surely the BIA could find a reason for something that, even if it just misses F7 by a millimeter, could fit into the catch-all. Why don't you just stipulate to a remand? Take it back and have the BIA resolve it on that ground. Is that win-win? No, Your Honor. I think that this case is – well, the bottom line is that the petitioner didn't exhaust this issue to begin with. So we will – Okay, let's – take that off the table. Take that off the table. Why don't you stipulate to a remand? I mean, the BIA in all of its expertise wants to make good decisions, right? That's why it has expertise. You've got a catch-all right here. Why doesn't it use its expertise, its knowledge of the statute, and not ignore the catch-all? You tell us that it's an expert, and then it doesn't use the catch-all. Then it seems to fit really, really nicely. We can't do that. That's what we can't do. That's what Shinari says. We can't do the catch-all for you. That's right, Your Honor. So just – why don't you stipulate to a remand? Because there is a published BIA decision on point, although the board didn't interpret it here. The matter of Valdivinos did interpret this provision. But that doesn't – the published decision doesn't say we'll never stipulate to a remand to have a better reason. Well, Your Honor, I think there's just absolutely no need to stipulate to a remand. I think to the extent that the board – Well, you just told us it's an ambiguous statute. It could go either way. I mean – But it has already been resolved by the agency in matter of Valdivinos. So to the extent that the court has jurisdiction, then it should refer to the board in matter of – To the extent it's ambiguous, again, it seems to me that the rule of validity at least should not be ignored here. Well, Your Honor, once the statute is ambiguous, then the board's reasonable interpretation – I know you're back to Sharpe again and the all-encompassing power of the agency. I'm not sure I agree with that. Right. Ambiguity – your notion of ambiguity, it has such a quick trigger. What do you do? You show up with one cannon of construction and say, ha, it's ambiguous? I mean, there are, you know, hundreds of cannons of construction. And it seems to me that just showing up and saying it can be interpreted two ways, courts have no real power. As soon as one side comes up with one cannon of construction and you come up with another, congratulations, we're out of the picture. We're gone. We're just going to do whatever BIA says. So surely our test for ambiguity isn't something as facile as one cannon versus one cannon. Surely we can scrutinize this a little more and determine on our own if this is ambiguous or not without just immediately saying maybe, possibly it could have different meanings. Certainly, Your Honor. I mean, it is within this court's power to determine whether it's ambiguous or not. And I think that's the linchpin of this case. But there are very good arguments for why it is ambiguous. Let's go back to Judge McKee's point, that if you have a matter of pure statutory construction, we have a case called Drake's, and it reads, and it was written by Judge Berry, that a pure issue of statutory construction for the courts to decide does not implicate agency expertise. Thus, Chevron deference is not due, not required. Why don't we just say this is pure statutory construction? It is pure statutory construction to the point on whether it is ambiguous or not, Your Honor. I think that once we get past that, then there's supreme case law on point on Chevron that this court has always followed. The statute that we're dealing with is confinement as a result of conviction. So the confinement must be caused by the conviction. The word result is not limited to cause, Your Honor. It also covers logical constructs. And you're saying the BIA is the expert in that, that we should listen to, the meaning of results. That's what you're arguing. We should defer to the BIA in its incredible expertise in what result means. In the context, Your Honor. Oh, sorry. Please answer. I'm sorry. I'm sorry. In the same manner in which the Ninth Circuit and the Tenth Circuit reasoned this case. The context here is what matters, and the context is that it's... It's in the INA. That's the context. Well, but I'm talking about the subject matter, Your Honor. The subject matter is bail. And whether or not when someone pleads guilty, the time that they spent in custody because they could not post bail is confinement as a result of. That's the context. That has nothing to do with immigration or persecution or asylum or withholding of removal or a convention against torture. That's the context. And you're saying we should defer to the agency's expertise in what result means in that context. Well, yes, and I think that's what the Tenth Circuit did on point explicitly, and the Ninth Circuit did it implicitly in its decision. That because this is an issue where it is well accepted in every jurisdiction, that free trial detention can become part of the sentence imposed following conviction. It effectively becomes confinement. You just rephrased the question. You just said can become part of the sentence imposed. It's not the same as saying as a result. No, I was just trying to explain the context. That's the context that matters for the Ninth Circuit and the Tenth Circuit. So just a curiosity. When we talk about this Chevron and the ambiguity, what Supreme Court or Third Circuit case should we read to tell us what the threshold is for ambiguity? Indeference. And should we forget about Marbury versus Madison? Yeah. I mean, I mean, is it just is it just a little bit of ambiguity? You have one canon. Your opposing counsel has one canon. How thoroughly do we look to determine ambiguity? It seems that you're advocating such a quick trigger. I know why you are, because you want us to defer to the agency's interpretation of result. But in order to get us to defer, you've got a really quick trigger for ambiguous. And I'm just asking, what's your authority for such a quick trigger? Well, Your Honor, I would point to the Maya Kestavan case. The court also ordered us to respond to, or at that point didn't exist yet. But the issue is whether a good moral character period and the continuous physical presence period need to be coterminous. And this court has held that it need not be coterminous. Even though the cancellation of removal provision is, when you read it in isolation, it is unambiguous. It is very clear that the two periods need to be, they need to be the same. However, there's a separate stop time rule where if you've read it that way, you'll be against it. And so this court held that, read in context, when there are more than one reasonable interpretation, then that's the sufficiency for ambiguity. So all we need to do is get to two reasonable interpretations, then we're ambiguous. Don't canons of construction solve that for us all the time? Isn't the whole point of a canon of statutory construction to guide a court when there might potentially be two possible reasonable outcomes? Then we look and we look at a canon. A canon can say, you know, the listing of specifics, you know, the listing of the general doesn't exclude specifics, something like that. Those canons solve ambiguities for us. They solve reasonable interpretations. So isn't it before we would ever find just quick ambiguity, we would have to exhaust all of the other canons of construction? Well, Your Honor, I think that the canons of construction, as you pointed out earlier, can go both ways in this case. Make a case that they go for your opponent's way, because in order for it to be ambiguous, you have to make the case that he's right, too. Not just that you're right, but he's right. Make the case that he's right. I think that as a result of, in the INA itself it's used, and in most situations, it is clear in that context that A must come before B. But here we're dealing with an issue where it's a fluid relationship between pretrial confinement and conviction. And it's well accepted that pretrial confinement can become part of the conviction later on by every state, by the United States federal courts. So, whereas in some situations, in fact, in most situations, as a result of, will be clear that it requires a temporal connection. Here, it's ambiguous whether it does. And the word result does allow for logical constructs. By the dictionary definition alone. And when we jump into the policy grounds, this court has, you know, I think it's well accepted that the court doesn't interpret a provision to go against the policy, the clear policy of Congress. I believe that's mentioned also, may have cast it on. And here, you know, Congress does use the length of sentence or the time in confinement as a proxy for the seriousness of a conviction. And has made it, I'm sorry, I see that my time is up. You know, what you said is interesting because the way this statute is phrased, they could have done it in terms of has been confined as a result. Well, as a result, it gets the same place. But they could have used something other than as a result of and just said something has like has been in custody for a period of 180 days or more. That would get around the problem. That would probably put another problem in because the person if the person was in custody, then acquitted. Then you've got a probably a bigger constitutional issue. I think that this one is the middle ground that solves that issue as well. And so it's only going to count when somebody is convicted and the time period is credited as as part of the sentence imposed. If it's here, not as part of the sentence. It wasn't. It wasn't in the sentence that was chosen has to be chosen because that's the amount of time the guy spent in custody. Now that I've been helps you. Well, your honor. Yes. But I just wanted to point out one quick thing that this petitioner was sentenced to a third degree crime in New Jersey. The sentencing guidelines, there's between three and five years and he received three and a half years. I believe it is one thousand five years. I'm sorry. That's three to five years. Yes. The sentencing guidelines is between three and five years. So he received in a very low range of that. So I just want to alleviate any concern that he was given a sentence without any thought whatsoever. That doesn't appear that it was just simply because, well, this is time served. This is what he gets. It did fall within the well within the guidelines for New Jersey. That's if that doesn't get us through the statutory issues we have here. Yes. I don't want to take a voluntary remand for the catch all. What are the chances? I mean, just the real world. Let's pretend we're in the real world and not in the legal world, for instance. What are the chances that the BIA is going to rule against you? Is this a good remand? What are the chances of that happening? Well, your honor, there is no basis for me to to go along with a legal remand at this point. I don't I don't even have that authority, frankly. Just about. I think that's where you're going. You don't have the authority to do it. Yeah. It's it should petitioner wish to engage in some sort of mediation that we can explore that issue. We are always open to that. All right. So we don't have that. I don't have that authority to go for it. I mean, if if we suggested mediation, would you be willing to talk with? Absolutely. Thank you. Yeah. Your honor, your honor's one quick point. If I may just let's play through this. If the conviction has to be confined. As a result of conviction, I'm wondering if we're reading this as if it must be just one thing. But it would seem it could be a couple court said. That the time served is your sentence and the time served was before the conviction. And that's your argument. So therefore, it doesn't textually apply. But could the court not also say that I'm I'm sentencing you sentencing you also. To that amount of time that you previously were served as a result of your conviction. I'm sorry that you previously served because you couldn't make bail. Excuse me. But as a matter of grace, I'm letting you out. I'm releasing you, which has nothing to do with the statute. I'm just saying I feel sorry for you. But the thirteen hundred and thirty two days that I just picked you, you've served it. And it isn't it is as a result of your conviction. Because I would have given you somewhere between three to five years under these guidelines. And that's exactly what I'm doing. So. I'm sentencing you to three hundred thirty two days. Within the guidelines as a result. Of your conviction. Your honor, I would suggest that that it would be akin to kind of the. It would be something out the words time served, served for as a result of conviction. And our issue with the concept of time served as equaling confinement as a result of a conviction, is that it doesn't become as a result of a conviction just because the judge utters certain words. No, you you're you're convicted. You pled. And I'm saying that you are to be confined for thirteen hundred thirty two days. But I'm going to consider that the time you spent before. As a result of not making bail. Is. Is the sentence. But I'm hereby as an act of mercy releasing you because I feel sorry for you. In that instance, I still don't think it would solve the issue that the time served or the pretrial detention or the confinement, which is which is right, which is what renders him ineligible for cancellation of removal. So are you willing to. What do you want from us? Remand. Your honor, we're asking for you to reverse the denial of his application for cancellation, removal and remand. What is your position with respect to the possibility of mediation? Your honor, we would absolutely engage in mediation. OK, thank you. Anything else? You have yesterday to follow up. Since you're both willing to do that, we will have the court media to contact you. And he's out this week, but he'll be back next week. And he'll explain the process from there, since you both are probably willing to at least give it a try. And we'll see where it goes from there. Thank you, your honor. Thank you. Thank you. Take the matter. Take the matter into.